**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **SEAN CHRISTOPHER HODGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:12-CV-202 (MTT)** |
| | ) | |
| **BEN COLLINS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendant Collins's Motion to Dismiss (Doc.

10) and Defendants Cannon and City of Byron's Motion for Judgment on the Pleadings

(Doc. 14). For the reasons set forth below, Defendant Collins's Motion is **GRANTED**

and Defendants Cannon and City of Byron's Motion is **GRANTED in part** and **DENIED**

**in part**.

## I.   FACTUAL BACKGROUND

Plaintiff Sean Christopher Hodges was a Captain with the City of Byron's Police

Department. Defendant Wesley Cannon was and is Byron's Chief of Police. In early

2010, Hodges complained to the City that he had been improperly classified as an

exempt employee and thus did not receive overtime pay he should have received.

(Doc. 1 at ¶ 21). Specifically, Hodges complained that Lieutenant Billy Lavender,

Cannon's brother-in-law, had similar job duties and a similar job description but was

classified as non-exempt and received compensation for overtime. (Docs. 1 at ¶ 22; 13-

4 at 7). On March 4, Hodges's counsel sent a demand to Cannon for unpaid overtime

compensation pursuant to the Fair Labor Standards Act ("FLSA"). (Doc. 1 at ¶ 24). On

March 26, Hodges's counsel made a written offer of compromise to Byron to settle his FLSA claim.

Sometime between March 26 and March 30,[1] Hodges accessed Cannon's city email account and read an email sent from one of Hodges's subordinates directly to Cannon.  (Doc. 1 at ¶¶ 26-27).  Hodges responded to the subordinate's email, with a copy to Cannon, and informed the subordinate that Hodges should have been included as a recipient to the email.  Hodges alleges that he was able to access Cannon's email account because Cannon gave him his username and password and asked him "to check Cannon's email daily so that they [would] not miss any information that may be provided by the public."  (Doc. 1 at ¶¶ 17-20).  This was necessary, Hodges alleges, because tips posted on the department's website were routed to Cannon's email account.  (Doc. 1 at ¶¶ 17-19).  Hodges asserts that he had accessed Cannon's email on many occasions prior to March 26, always with Cannon's consent and with no complaints from Cannon.  (Doc. 1 at ¶ 29).

On April 1, 2010, Cannon wrote the Georgia Bureau of Investigation to request that the GBI conduct a "'criminal investigation involving suspected criminal activity which we have reason to believe has occurred within our department.'"  (Doc. 1 at ¶ 35). Cannon stated in his letter that "'[t]he suspected criminal activity consist [sic] of but not limited to criminal acts related to computer invasion of privacy and possible violations of oath of office by Georgia certified peace officer(s) currently employed with this agency.'" (Doc. 1 at ¶ 36).  The GBI assigned Defendant Ben Collins, a Special Agent with the GBI, to investigate the matter.  Hodges alleges that Cannon told Collins that Hodges

---

[1] The Complaint states "[s]ometime between March 26 and March 20," but it is apparent that Hodges meant March 30.

was the "subject of the investigation." (Doc. 1 at ¶ 37). Further, Hodges alleges "Cannon lied to Collins by failing to inform his [sic] that he had given Hodges authority to access his email account and had provided Hodges with his username and password." (Doc. 1 at ¶ 41). In other words, Hodges claims that Cannon set him up. During the course of his investigation, Collins never interviewed Hodges.

On June 2, 2010, Collins successfully sought a warrant for Hodges's arrest on the charges of Computer Trespass and Violation of Oath of Office as well as a warrant to search Hodges's residence. (Doc. 1 at ¶ 39; Doc. 25-1 at 4-11). In his affidavit for the search warrant,[2] Collins stated that he learned of Hodges's response to the subordinate's email from Cannon, and Cannon confirmed that none of the recipients of the email had contacted Hodges about that email. (Doc. 25-1 at 6). Collins's affidavit also stated that on March 30, 2010, Cannon found three of his emails had been opened by someone else and immediately asked an IT specialist for the Byron Police Department to change all employees' email passwords. (Doc. 25-1 at 6). Later on March 30, Cannon further alleged, Hodges contacted a company that provides technology services to Byron to find out whether "there was a way to manipulate email logs" and to see if his password could be reset to give him remote access. (Doc. 25-1 at 6). Collins's investigation further revealed "eight instances of illegal access" into Cannon's email account. (Doc. 25-1 at 7). Six of the IP addresses associated with the intrusions were traced to a resort where Hodges had been vacationing at the time, while

---

[2] The Parties dispute whether the Court can consider the affidavit in a motion to dismiss. For reasons discussed later, the Court finds that the affidavit may be considered at this stage. *See infra* section II.B.

the other two were traced to Hodges's residence.  (Doc. 25-1 at 7).  The arrest warrants were issued on June 2, and Hodges was arrested that day.  (Doc. 1 at ¶ 57).

On June 24, 2010, Hodges was terminated from the Byron Police Department. (Doc. 1 at ¶ 126).  Hodges appealed his termination, and an administrative hearing was held on July 23.  (Doc. 1 at ¶ 60).  Because of the pending criminal charges, Hodges did not testify at the hearing.  The administrative law judge ("ALJ") held that Cannon's decision to terminate Hodges was appropriate because Hodges engaged in unauthorized use of Byron's equipment by accessing Cannon's email account without authority or permission.  (Doc. 13-8 at 3).

Finally, Hodges alleges that Cannon "urged the District Attorney's Office to prosecute despite the total absence of probable cause," and Hodges was indicted on May 20, 2011.  (Doc. 1 at ¶¶ 62, 65).  The indictment was dismissed on November 10, 2011, after Hodges filed a demurrer.  (Doc. 1 at ¶ 67).

Hodges filed this action on June 1, 2012, alleging that all Defendants violated 42 U.S.C. § 1983 and asserting state law claims for false arrest and malicious prosecution against Cannon and Byron.  Hodges also alleges a violation of the Anti-Retaliation Provisions of FLSA against Byron.  Collins has moved to dismiss the claims against him, and Cannon and Byron have moved for judgment on the pleadings.

## II.   DISCUSSION

### A.  Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B. Admissibility of the Search Warrant Affidavit

As an initial matter, Hodges contends that the search warrant affidavit may not be considered on a motion to dismiss.  Under the "incorporation by reference" doctrine, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed."  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citation omitted).  "'Undisputed' in this context means that the authenticity of the document is not challenged."  *Id.* (internal citation omitted).  Hodges first argues that the affidavit is not central to his claim because his claims arise from an illegal arrest rather than an unconstitutional search.  Hodges next disputes the authenticity of the document because "it is unsigned, undated and appears to have

been generated electronically."  (Doc. 19 at 12).  Finally, Hodges argues that the affidavit may not be considered because it contains "rank hearsay" from Cannon.

Hodges's objections are without merit.  Although the affidavit was made as part of the application for the search warrant, it is central to Hodges's claims premised on his unlawful arrest because it establishes whether Collins had probable cause.  Further, the affidavit was presented to the same magistrate judge on the same date as the affidavit for Hodges's arrest.  (Docs. 13-2; 25-1 at 10).  There is no genuine dispute over whether the affidavit is authentic.  It is signed and dated by Collins and the magistrate judge.  Finally, the affidavit is not offered to prove the truth of its contents but rather to show what information Collins relied on to make the arrest.  Accordingly, the Court finds consideration of the search warrant affidavit appropriate.

## C. Preclusive Effect of the Findings of the Administrative Law Judge

Byron contends that it is entitled to judgment on Hodges's FLSA retaliation claim because the ALJ's finding that Hodges was terminated for unauthorized access of Cannon's email is entitled to preclusive effect.  In a footnote in their joint brief, Byron and Cannon both argue that the ALJ's decision collaterally estops Hodges from "re-litigating in this proceeding the ALJ's finding that his use of Cannon's username and password was unauthorized."  (Doc. 14 at 12 n.3).  If the ALJ's finding is entitled to preclusive effect, then arguably all Hodges's claims fail.  If it has been established that Hodges did not have authority to access Cannon's email account and that he was fired for unauthorized access, Hodges has no viable claim.  However, the Court is not prepared, based on the current record, to find that the ALJ's findings bar any of Hodges's claims.

There is a presumption in favor of federal courts giving unreviewed decisions of state agencies preclusive effect if the state's courts would do the same. *Jones v. Hamic*, 875 F. Supp. 2d 1334, 1348 (M.D. Ala. 2012) (citing *Univ. of Tenn. V. Elliott*, 478 U.S. 788, 799 (1986)).  In *Jones*, the court articulated "a three-step inquiry for determining whether a state administrative agency's unreviewed fact finding deserves preclusive effect.  First, a court determines whether the statute under which the plaintiff asserts a claim overrides the federal common law's preference for barring relitigation of questions already litigated and decided.  If the applicable statute shows that Congress intended to push aside federal preclusion law, the inquiry stops there and the unreviewed agency determination will have no effect." *Id*.  Second, a court must determine whether "the state's own courts would give the agency's fact finding preclusive effect." *Id*.  If so, then the court reaches the third step, which requires it "to scrutinize the procedures used by the state agency to reach the result that it reached, measuring their 'quality, extensiveness, [and] fairness[.]'" *Id*. (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)).

Preclusion clearly applies to Section 1983 claims as long as "the [plaintiff] received a *full and fair opportunity* to present his case in the administrative hearing." *Travers v. Jones*, 323 F.3d 1294, 1296 (11th Cir. 2003) (emphasis added).  Several courts have also found that there is no indication of congressional intent to spare FLSA claims from federal preclusion law.  *See Jones*, 875 F. Supp. 2d at 1349 (noting, however, that preclusion is appropriate only if the parties had a "full and fair opportunity to litigate"); *Thakkar v. Balasuriya*, 2009 WL 2996727, at *5 (S.D. Tex.).

Next, the Court must determine whether the ALJ's decision would have preclusive effect in Georgia's state courts.  Under Georgia law, "[t]here are four requirements for application of the doctrine of collateral estoppel: (1) both proceedings must involve the same parties or their privies; (2) the issue must have been actually litigated and determined in the first proceeding; (3) that determination must have been essential to the judgment in the first proceeding; and (4) the party against whom the doctrine is asserted must have had a *full opportunity to litigate the issue in question*." *Swain v. State*, 251 Ga. App. 110, 113, 552 S.E.2d 880, 882-83 (2001) (emphasis added).

The issue of whether Hodges had permission to access Cannon's email was actually litigated and was a critical part of the ALJ's decision.[3]  That determination is identical to the issue before this Court.[4]  By necessary implication, the ALJ also determined that Hodges was not terminated in retaliation for asserting a FLSA claim. Thus, the first three requirements for preclusion under Georgia law are present here. That leaves the question of whether Hodges had a "full opportunity to litigate the issue in question."

As noted, the third step, which is drawn from the Supreme Court's decision in *Montana*, requires the Court to scrutinize the agency's procedures to determine their

---

[3] The ALJ found that "Hodges's unauthorized hacking" caused Cannon to lose all trust in Hodges and thus, Cannon's decision to terminate him was "appropriate."  (Doc. 13-8 at 3).

[4] There is some authority suggesting that a state court would not give preclusive effect to a state administrative agency's fact finding in a Section 1983 action when the issue before the agency is "geared toward an entirely separate cause of action," despite the Supreme Court's holding in *Elliott. Flournoy v. Akridge*, 198 Ga. App. 86, 88, 400 S.E.2d 649, 652 (1990).  However, this decision was pre-*Travers*, which extended the Supreme Court's holding in *Elliott* to include preclusive effect in Section 1983 claims, and the state court of appeals' decision also noted that federalism concerns were not before that court.  *Id.*

-8-

"quality, extensiveness, [and] fairness."  440 U.S. at 164, n.11.  The common thread of fairness weaves its way throughout this and any test for the application of preclusion.  If a party did not have a full and fair opportunity to litigate the relevant issues in the prior proceeding, then preclusion almost certainly will never be appropriate.  Here, there is no evidence that the rules and procedures applied at the administrative hearing were unfair and there is certainly no indication that the ALJ harbored any bias against Hodges.  Nevertheless, the Court has significant concern with the fairness of giving preclusive effect to the ALJ's findings.

The critical issue at the hearing, which was held shortly after Hodges's arrest and termination and while the charges were pending, was whether Cannon gave Hodges permission to read his email.  Byron's attorney made this clear at the hearing.

MR. DAWKINS:  If I may, Your Honor.  I think the central issue is they contend that Mr. Hodges had authority ---

THE COURT:  Right.

MR. DAWKINS:  and we contend that he did not.  If he had authority, then that answers the question of whether this conduct --- it goes a long way towards answering the question of whether his termination for doing so is appropriate.  If he didn't have authorization, that clearly answers the question of whether or not the termination is appropriate.  So, that's the question in a nutshell, whether or not he had authorization to do this?[5]

It is understandable that Byron's attorney steered the hearing in this direction.  Only Hodges and Cannon knew whether Hodges had Cannon's permission to read

---

[5] (Doc. 13-4 at 12-13).

Cannon's email, and Hodges, as a practical matter, could not testify at the hearing because of the fear that his testimony would be used in the criminal prosecution. Hodges's attorney explained to the ALJ the dilemma Hodges faced:

> And here's where we are with this hearing. The way things have transpired, Capt. Hodges has never been asked about this. … He was not asked about this by Chief Cannon when Chief Cannon called him in on, I believe it was, April 5th, the day he returned back to work after being on vacation. He was not asked about it any time subsequent to that. The next step after Chief Cannon and Billy Lavender worked with the GBI was that he was arrested, and that's the position he stands in now. So, he is now in the position that he can not, with any comfort, say anything about this. So, I'm relying on Chief Cannon as well as circumstantial evidence to establish that there was consent. I think that will happen, but I mean that's the peculiar circumstance I'm in now because of how this was handled. [6]

In addition to Hodges's concern that his hearing testimony could be used to prosecute him, Hodges's counsel was referring to the fact that because Hodges was never interviewed there would be no evidence of his version of events in the record. Had Hodges been apprised of his *Garrity* rights, he could have given a statement without fear that his statement could be used against him in subsequent criminal proceedings. *See United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002) (quoting *In re Fed. Grand Jury Proceedings*, 975 F.2d 1488, 1490 (11th Cir. 1992)) ("*Garrity* protects police officers from having to choose between cooperating with an

---

[6] (Doc. 13-4 at 13-14).

internal investigation and making potentially incriminating statements.  Immunity under *Garrity* prevents any statements made in the course of the internal investigation from being used against the officers in subsequent criminal proceedings.").[7]

Although Cannon testified that he did not give Hodges his password, his testimony was not particularly emphatic.  After testifying on direct that he "never made a habit of giving anyone my username and password," this exchange occurred on cross:

Q:  I think you testified on direct that you never --- I think your exact words were "make it a habit" to give any password to anyone.

A:  Yes, sir.

Q:  Was that correct?

A:  I believe that's what I said, yes, sir.

Q:  And lawyers being lawyers when you say "make it a habit" ---

A:  Right.

Q:  --- that leads one to ask even though it's not a habit, do you do it?

A:  I can never remember giving anyone my password to my computer system.  No, sir.  I can never remember giving [it to] anyone for any reason.

---

[7] Hodges's present counsel, noting that the law firm now representing Byron and Cannon also represented Byron at the administrative hearing, argues that defense counsel manipulated the administrative hearing so that Hodges could not testify and the ALJ's decision would be based only on Cannon's testimony.  Hodges's counsel also points to defense counsel's efforts to exclude evidence relevant to the FLSA claim at the administrative hearing by arguing, "with respect to the wage and hour related complaints Mr. Hodges made, there's a forum available to him to address those concerns.  It's Federal Court.  I think we'll probably end up there to address that claim."  (Doc. 13-4 at 9-10)  No doubt Hodges feels more than a little whipsawed; having been told he needed to go to Federal court, he now faces the Defendants' preclusion argument.  However, but the Court sees no evidence that Byron's counsel acted improperly.

(Doc. 13-5 at 46, 51).  Cannon's testimony, however, told only one uncorroborated side of the story.  Because Hodges did not testify, the ALJ lacked the rest of the story. Hodges not only would have disputed Cannon's testimony, he would have explained why Hodges had given him access (to check crime tips daily) and that his frequent access never was an issue until Hodges's submitted his FLSA demand to Byron's attorneys.  Of course, if the ALJ had heard this testimony, he could have nevertheless believed Cannon.  But based on the record he had, only one outcome was possible.

Accordingly, the Court cannot, based on the record before it, find as a matter of law that the ALJ's finding should be given preclusive effect.  Therefore, the Court denies Byron's Motion to Dismiss on Hodges's FLSA retaliation claim.  To the extent the Defendants argue any other claim is barred as a matter of law by collateral estoppel, those arguments, at this juncture, are rejected.

### D.  Absolute Immunity

Collins argues that he is entitled to absolute immunity because Hodges's claims against him stem from his testimony at the administrative hearing.  Such testimony, Collins argues, is foreclosed from use as evidence to substantiate Hodges's claims and without reference to this testimony, Hodges "has not alleged any non-conclusory facts to infer that Collins knowingly or recklessly sought the arrest warrants without probable cause."  (Doc. 10-1 at 8).

Collins cites *Butz v. Economou*, 438 U.S. 478 (1978), for the proposition that witnesses at administrative hearings are entitled to absolute immunity for their testimony.  *Butz*, however, extends absolute immunity only to those acting in prosecutorial or judicial functions in an administrative hearing.  *Id.* at  512-15; *see also*

*Lewis v. Drouillard*, 2010 WL 3464308, at *4 (E.D. Mich.) (extending *Butz* to apply absolute immunity to witnesses at administrative hearings because "*Butz* deals only with immunity protections of administrative law judges and officials who perform functions of a prosecutorial nature").  Although courts in other circuits have found that witnesses at administrative hearings are entitled to absolute immunity,[8] Collins has not pointed to, and this Court has not found, any Eleventh Circuit authority holding that absolute testimonial immunity exists for witnesses in an administrative setting.

Even if clear authority existed in this circuit, Collins still is not entitled to absolute immunity for his testimony at the hearing.  First, Hodges's Section 1983 claims against Collins are not derived solely from Collins's testimony.  Hodges's claims are also based on his personal knowledge regarding the investigation (e.g., Hodges has alleged that Collins never interviewed him during the course of the investigation) and on the contents of the arrest warrant and affidavit in support.  Second, Collins's investigation and application for the arrest warrant were non-testimonial acts, and "[t]he simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity."  *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir. 1994) ("[C]onstitutional wrongs completed out of court are actionable even if they lead to immunized acts.")).

Although the Eleventh Circuit has held that absolute testimonial immunity relates back to conspiracy to fabricate testimony, it has not held that such immunity relates back to acts unrelated to the testimony.  *Rehberg v. Paulk*, 611 F.3d 828, 841-42 (11th

---

[8] *See, e.g.*, *Cignetti v. Healy*, 89 F. Supp. 2d 106, 117 (D. Mass. 2000).

Cir. 2010) (holding that absolute immunity existed for false testimony and conspiracy to fabricate and present false testimony before a grand jury but finding that absolute immunity would have been inappropriate had there been an "allegation of a pre-indictment document such as a false affidavit or false certification").

Here, Hodges has alleged that Collins created an affidavit with knowingly or recklessly false statements or material omissions prior to and not in anticipation of testimony at the administrative hearing.  Accordingly, Collins is not entitled to absolute immunity and any testimony given by him at the hearing is not foreclosed from use as evidence.

### E.  42 U.S.C. § 1983

Hodges alleges violations of 42 U.S.C. § 1983 based on false arrest and malicious prosecution against the Defendants.  Section 1983 provides a cause of action for "a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

#### 1.  Claims Against Byron

To the extent Hodges has asserted Section 1983 claims against Byron, those claims lack merit.  The Supreme Court has placed strict limitations on municipal liability under Section 1983.  *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  "A [city's] liability under § 1983 may not be based on the doctrine of respondeat superior."  *Id.*  Instead, only when the city's "official policy" causes a constitutional violation may a city be held responsible.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

694 (1978).  Hodges can establish an official policy of Byron by showing "either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker for the [city]."  *Grech*, 335 F.3d at 1329 (internal citations omitted).

Other than asserting a general claim of respondeat superior against Byron in his Complaint, Hodges has not alleged that there was an official city policy or an unofficial custom or practice that resulted in the alleged violation of his constitutional rights. Accordingly, Hodges has failed to allege Section 1983 claims against Byron, and these claims are **dismissed with prejudice**.

### 2.  Claims Against Cannon and Collins

Hodges claims that Cannon and Collins violated his Fourth Amendment rights by subjecting him to false arrest and malicious prosecution.  Cannon and Collins both argue that Hodges cannot establish a necessary element of both claims – the absence of probable cause.  In the alternative, they argue they are entitled to qualified immunity because Hodges has not shown that they violated clearly established law.

Cannon also argues that because Hodges was arrested pursuant to a warrant, he must pursue a claim for malicious prosecution rather than false arrest.  *See Spillers v. Crawford County*, 2011 WL 5910738, at *8 (M.D. Ga.).  However, Cannon further argues, Hodges's malicious prosecution claim is premature because the prosecution has not been terminated in his favor, a necessary element of a claim for malicious prosecution.  The Court addresses this argument first and then will turn to the question of whether Collins and Cannon are entitled to qualified immunity.

### (a.)  False Arrest and Malicious Prosecution Generally

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures' .... [and] an arrest is a seizure of the person." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  Furthermore, it is a constitutional violation for an officer to make knowingly or recklessly false statements or omissions in support of a warrant, but an officer is not liable for negligent misrepresentations or omissions.  *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994). "The 'reasonableness' of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause."  *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citing *Skop*, 485 F.3d at 1137).  "The existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest."  *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010).

The Eleventh Circuit also "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under section 1983." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).  To state a claim for malicious prosecution under Section 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  *Id.* (internal citations omitted).  The elements of a common law tort of malicious prosecution are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Id.* (internal quotations and citation omitted).

Cannon argues that Hodges may not pursue a Section 1983 false arrest claim because his arrest was made pursuant to an arrest warrant.  Cannon cites *Spillers*, 2011 WL 5910738, at *8, to support his argument.  As impressed as this Court is with *Spillers*, the Court is not so sure that *Spillers* and the authority it cites answer the question whether the existence of a warrant necessarily means that a plaintiff cannot pursue a federal false arrest claim.[9]  *See Wood v. Kesler*, 323 F.3d 872, 878-83 (11th Cir. 2003) (analyzing the plaintiff's arrest pursuant to a warrant and his subsequent prosecution as Section 1983 claims for both false arrest and malicious prosecution).  Nor does this Court try to answer that question today.  Given the Court's other rulings, there will be time enough to determine whether Hodges can proceed to trial on both his false arrest claim and his malicious prosecution claim.

### (b.)  Whether Hodges Has Sufficiently Alleged that the Criminal Prosecution Was Successfully Terminated in His Favor

Cannon argues that the underlying prosecution has not yet terminated in Hodges's favor and therefore Hodges's malicious prosecution claim is premature.  When the present disposition of a case is such that the prosecutor can seek an indictment in the future, there is not an abandonment or termination of the proceeding in the plaintiff's favor until there is a "subsequent formal entry of dismissal of the criminal charges."  *McCord v. Jones*, 168 Ga. App. 891, 892, 311 S.E.2d 209, 211 (1983);[10] *see also Uboh v. Reno*, 141 F.3d 1000, 1005-06 (11th Cir. 1998) (noting that whether the

---

[9] As opposed to a false arrest claim brought under Georgia law, which clearly is barred if a warrant or indictment has issued.  *See infra* section II.F.

[10] Although a federal malicious prosecution claim's "elements and whether they are met are ultimately controlled by federal law," courts may use state law to "help inform the elements of the common law tort of malicious prosecution."  *Grider*, 618 F.3d at 1256 (quoting *Wood*, 323 F.3d at 882).

charges are likely to be renewed in a subsequent prosecution and thus risking "inconsistent, parallel proceedings" is a relevant factor in determining whether the criminal prosecution has terminated in the plaintiff's favor).

Hodges filed both a general demurrer and a special demurrer challenging his indictment.  His general demurrer alleged that he was not afforded the protections of O.C.G.A. § 17-7-52,[11] and his special demurrer asserted that his indictment on the charge of computer theft violated the Due Process Clause of the Fourteenth Amendment.[12]  (Doc. 13-6 at 1).  The Superior Court of Peach County granted the special demurrer because "[a] person of common intelligence would have no way of knowing that reading an email, even if one did not have authority to read the email, could be construed as appropriating data in violation of O.C.G.A. § 16-9-93(a)."  (Doc. 13-6 at 4).  The court denied Hodges's general demurrer as moot in light of its order on the special demurrer.  (Doc. 13-6 at 5).  Under Georgia law, a defendant who has been granted a special demurrer rather than a general demurrer, generally speaking, may be reindicted.  *Washington v. State*, 298 Ga. App. 105, 106, 679 S.E.2d 111, 113 (2009) (internal citations omitted).

---

[11] O.C.G.A. § 17-7-52 requires "a present or former peace officer" to be notified by the district attorney before an indictment is returned by a grand jury "charging the officer with a crime which is alleged to have occurred while he or she was in the performance of his or her duties."

[12] Apparently Hodges was indicted under the Computer Theft statute, O.C.G.A. § 16-9-93(a), rather than the Computer Trespass statute which was the basis for his arrest.  "Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of: (1) [t]aking or appropriating any property of another, whether or not with the intention of depriving the owner of possession; (2) [o]btaining property by any deceitful means or artful practice; or (3) [c]onverting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property shall be guilty of the crime of computer theft."  O.C.G.A. § 16-9-93(a).

However, a court may find that a prosecution has been terminated in a plaintiff's favor even when the plaintiff may technically be reindicted. "[I]f the prosecutor does not diligently take action to recommence the prosecution, it may be considered terminated in favor of the accused by reason of voluntary abandonment by the prosecutor." *Vadner v. Dickerson*, 212 Ga. App. 255, 256, 441 S.E.2d 527, 528 (1994). When there has been a delay in reinstituting proceedings, a party may show the prosecution has not ended through an affidavit or other evidence. *Id.*

Cannon has presented an affidavit from the former District Attorney dated July 20, 2012, which states that there is a possibility Hodges could be reindicted. (Doc. 14-1 at 3). This affidavit adds nothing to what the Court already knows; that is, Hodges could be reindicted within the four year statute of limitations. (Doc. 14-1 at 2-3). Close to three years have elapsed since the date of the alleged criminal conduct, and Hodges's special demurrer was granted over a year ago with no present signs of reindictment.

More importantly, and regardless of whether the state court granted a special or general demurrer, the court's order almost certainly forecloses further prosecution. Hodges's alleged conduct, the court concluded, simply did not violate any reasonable interpretation of O.C.G.A. § 16-9-93(a), the linchpin of the indictment. The order cuts to the heart of the case against Hodges and it seems further prosecution would be problematic at best. Accordingly, the Court finds that Hodges has sufficiently alleged that the prosecution terminated in his favor.[13]

---

[13] This issue may have to be revisited at some point, but on a motion to dismiss, the Court cannot hold as a matter of law that prosecution has not terminated favorably to Hodges.

### **(c.)** Qualified Immunity and Arguable Probable Cause

Both Collins and Cannon argue that Collins had probable cause to arrest Hodges and therefore Hodges cannot establish an essential element of both his false arrest and malicious prosecution claims – the absence of probable cause.  However, it is not necessary to address probable cause to determine whether Hodges has pled viable Section 1983 claims.  To avoid the Defendants' qualified immunity defense, Hodges must do more; he must establish the absence of arguable probable cause.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "There can be no doubt" that officers effectuating an arrest are performing discretionary duties.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"[14]  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of West Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."  *City of West Palm Beach*, 561 F.3d at 1291.  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *City of West Palm Beach*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

---

[14] None of the Parties dispute that the Defendants were performing their discretionary duties. Accordingly, Hodges has the burden to show that qualified immunity does not apply.

The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." *Id.* (internal quotations and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotations and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted). Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

In the Eleventh Circuit, a defendant is entitled to qualified immunity unless the plaintiff can show the absence of arguable probable cause. Arguable probable cause requires only that "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists." *Skop*, 485 F.3d at 1137 (emphasis in original). What is relevant for qualified immunity purposes is "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or

those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).

There is some confusion with regard to where the arguable probable cause determination fits in qualified immunity analysis. Some courts make the arguable probable cause determination as a part of the constitutional violation prong. *Skop*, 485 F.3d at 1137-43. Other courts insist that the determination of arguable probable cause is a part of the clearly established law prong. *Poulakis v. Rogers*, 341 Fed. Appx. 523, 526-28 (11th Cir. 2009). Most courts, however, do not bother to say where the arguable probable cause determination goes. *Coffin v. Brandau*, 642 F.3d 999, 1006-07 (11th Cir. 2011) (*en banc*).

There is some logic to the last approach because, at least in the Eleventh Circuit, the arguable probable cause determination, as a practical matter, generally subsumes the entire qualified immunity analysis. If there is no arguable probable cause, the plaintiff almost necessarily will have carried the burden of proving a constitutional violation. To the extent the determination of arguable probable cause is based on relevant law demonstrating "whether an officer reasonably could have believed that probable cause existed," that determination will reveal whether the law was sufficiently established to provide "fair warning" to the officer that his or her conduct was unlawful. In short, the arguable probable cause determination appears to effectively reduce qualified immunity to a one-step analysis.[15]

---

[15] At least this appears to be the case in the Eleventh Circuit. In *Walczyk v. Rio*, 496 F.3d 139, 165-71 (2d Cir. 2007), Justice, then Judge, Sotomayor argued in a concurring opinion that the Second Circuit's articulation of the arguable probable cause test adds a third layer to the qualified immunity analysis.

However, the Eleventh Circuit's decision in *Poulakis* illustrates a reason, possibly present here, why it could make a difference where the arguable probable cause determination is placed.  In *Poulakis*, the plaintiff complained that officers violated his Fourth Amendment rights when they arrested him for carrying an unlawfully concealed firearm.  Poulakis had stored his firearm in the closed center console of his automobile.  Unsure whether the firearm had been "concealed" in violation of Florida law, officers telephoned an Assistant State Attorney who, after hearing the facts, opined that the officers had probable cause to make an arrest.  As it turned out, however, Florida's concealed firearm statute excludes a firearm "securely encased" in a private vehicle.  Fla. Stat. § 790.25(5).  Consequently, the criminal charges were dropped.

In Poulakis's subsequent Section 1983 civil rights action, the dispositive issue was whether the officers had arguable probable cause to arrest Poulakis and thus were entitled to qualified immunity.  The panel majority made clear that the resolution of this question was a part of the clearly established law prong.  As the Court put it, "[i]n wrongful arrest cases, we have frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry.  In other words, we have said that when an officer violates the Constitution because he lacked [actual] probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity *if* he had 'arguable probable cause' to make the arrest."  *Poulakis*, 341 Fed. Appx. at 526 (emphasis in original).  Finding no Supreme Court, Eleventh Circuit, or Florida Supreme Court authority clearly establishing that a firearm in a console constituted a securely encased weapon, the majority held that the officers had arguable probable cause to arrest Poulakis.

The dissent took issue "with the majority's analysis [because] it treats arguable probable cause as part of the clearly established prong of the qualified immunity analysis, when both Eleventh Circuit precedent and reason show that whether a federal constitutional right was clearly established is distinct from whether a police officer was objectively reasonable in making an arrest." *Id.* at 534 (Quist, J., sitting by designation, dissenting).  To the dissent, the peculiar facts of the case made this a critical issue.  The dissent agreed that no decision of the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court had addressed the issue of whether a pistol in a console was securely encased under Florida's concealed weapon statute.  However, there was, the dissent noted, ample lower court authority in Florida establishing that a firearm in a console was securely encased.  For purposes of the constitutional violation prong, a court can, the dissent continued, look to all applicable authority, not just the authority relevant to determine whether a right has been clearly established.

Thus, in this very narrow context of a new or untested statute, perhaps it could make a difference where the arguable probable cause determination fits in the qualified immunity analysis.

### (d.)  Whether Collins Had Arguable Probable Cause

Hodges was arrested for the crimes of Computer Trespass, in violation of O.C.G.A. § 16-9-93(b), and Violation of Oath of Office, in violation of O.C.G.A. § 16-10-1.  "Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of: (1) [d]eleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network; (2) [o]bstructing, interrupting, or in any way interfering with the use of

a computer program or data; or (3) [a]ltering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program, regardless of how long the alteration, damage, or malfunction persists shall be guilty of the crime of computer trespass."  O.C.G.A. § 16-9-93(b).  "Any public officer who willfully and intentionally violates the terms of his oath as prescribed by law shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years."  O.C.G.A. § 16-10-1.

Hodges cites no decision of the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court providing law enforcement officers guidance on the application of Georgia's computer trespass statute.  Although it was apparently clear to the state court when it dismissed the indictment that there was "no way" that reading an email without authority could be a violation of the statute, that point has not been established by the Georgia Supreme Court and certainly not by the United States Supreme Court or the Eleventh Circuit.  Thus, if the arguable probable cause determination is part of the clearly established prong of qualified immunity, as the majority suggested in *Poulakis*, then Collins is entitled to qualified immunity.

However, Hodges argues that the facts he has alleged demonstrate that Collins did not have arguable probable cause to seek his arrest.  Necessarily, he seems to say that the Court should consider the issue of arguable probable cause as a part of the constitutional violation prong of qualified immunity analysis, an approach inconsistent with the majority opinion in *Poulakis*.  Nevertheless, the Court will address Hodges's arguments.

Hodges contends that the only fact Collins had to rely on in swearing out an arrest warrant for Computer Trespass was that Hodges had accessed Cannon's city email account.[16]  Hodges also alleges that Collins "testified falsely that any purported email intrusion by Hodges had resulted in the deletion or removal of any computer program or data; that Hodges had interfered with the use of the computer system or data; and/or that Hodges had altered or damaged a computer or computer network." (Doc. 1 at ¶ 48).  Hodges asserts that Collins did not provide any independent basis for charging him with Violation of Oath of Office, and Collins did not cite the oath allegedly violated in the arrest warrant.  Further, Hodges argues that Collins ignored exculpatory evidence by failing to investigate how Hodges would have acquired Cannon's username and password without permission.  These allegations, Hodges concludes, demonstrate a complete lack of probable cause for his arrest.

Although Collins's testimony at the administrative hearing and his affidavit in support of the search warrant indicate that Hodges's access of Cannon's email was the only allegedly criminal act that Hodges engaged in, it was not the only fact Collins relied on in seeking a warrant for Hodges's arrest.  Collins was informed of the deteriorating relationship between Hodges and Cannon and knew about Hodges's FLSA lawsuit. (Doc. 25-1 at 6).  Collins also knew that Hodges contacted a business that provides technology services to Byron to see if there was a way to manipulate email logs and

---

[16] Hodges relies on Collins's testimony at the administrative hearing to support his assertion. While Collins acknowledged that he did not find any evidence of deletion or removal of any computer program or data at the hearing, Collins also recounted the other information he found during his investigation.  (Doc. 13-5 at 1-23).

requested his password be reset to allow him to have remote access.[17]  (Doc. 25-1 at 6).  Hodges told the technology services provider that his user account had been hacked into, which apparently was not true, and also requested that Byron's computer network administrator be denied access to the system.  (Doc. 25-1 at 6).  Clearly, Collins possessed facts and knowledge of the surrounding circumstances that could lead a reasonable officer to suspect Hodges had engaged in criminal activity.

Hodges alleges that Collins either falsely testified or failed to tell the magistrate judge that he had no evidence that accessing Cannon's email resulted in the actual deletion, removal, interference, alteration, or damage to any data, computer, or computer network as contemplated by O.C.G.A. § 16-9-93(b).  Collins argues that the Computer Trespass statute only requires the intent to commit any of the acts listed in the statute and not the actual completion of any of those acts.  Even if the statute did require actual completion of the act, Collins continues, an officer is not required to allege every element of the offense to establish probable cause.

There is little authority (and, as noted, no clearly established authority) construing the meaning of the Computer Trespass statute.  One court has stated that the "plain language of the statute contemplates a temporary or permanent elimination of files or a temporary or permanent change of the file locations."  *Vurv Tech. LLC v. Kenexa Corp.*, 2009 WL 2171042, at *5 (N.D. Ga.); *but see Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 368, 718 S.E.2d 532, 536 (2011) (noting that the defendant "did not, *nor did he intend to*" commit any of the predicate acts in the statute) (emphasis added).  While this

---

[17] Apparently Hodges's request was made after Cannon's request to have his and all of his employees passwords changed immediately following his "discovery" that his email account had been accessed, preventing anyone from accessing the network remotely.

interpretation contemplates the completion of an act to satisfy the statute, the term "use" in the statute is defined to include "causing or *attempting to cause*: (A) [a] computer or computer network to perform or to stop performing computer operations; (B) [t]he obstruction, interruption, malfunction, or denial of the use of a computer, computer network, computer program, or data; or (C) [a] person to put false information into a computer."[18]  O.C.G.A. § 16-9-92(16) (emphasis added).  Had Collins only known Hodges read and responded to one of Cannon's emails, as Hodges characterizes the "fact" known to Collins, then arguable probable cause may not have existed.

However, the facts actually known to Collins could have led an officer to reasonably believe that Hodges was at least attempting to cause interference with Cannon's computer or the police department's computer network and was acting without authority.  For instance, Hodges's request to Byron's technology service provider to manipulate the server logs could have suggested to Collins that Hodges was attempting to remove evidence of reading Cannon's emails.  Collins could have also believed that Hodges wanted to prevent the computer network administrator from accessing the system to cause obstruction or interference.  Because Cannon did not inform Collins that Hodges had access to the email, this omission considered with the surrounding circumstances indicated that Hodges was acting "without authority" as required by the statute.  Further, the recent animosity between Hodges and Cannon and Hodges's employment dispute with Byron could have suggested a motive to Collins for

---

[18] Other portions of the statute lend support to Collins's argument because they do not use the words "intent" or "use" but, instead, suggest completion of the act.  *See* O.C.G.A. § 16-9-93(d) & (e).

Hodges's behavior.  Given Collins's knowledge of these facts, the Court cannot say that Collins lacked arguable probable cause.[19]

In any event, Collins does not have to allege every element of an offense to establish probable cause, even if the statute required the actual completion of an act. *See Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002).  Furthermore, the facts providing probable cause need not match the specific offense for which Collins actually arrested Hodges.[20]  *See Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (internal quotations and citations omitted).  Thus, an officer "is shielded by qualified immunity so long as [he] had probable cause to arrest [Hodges] for *any* offense."  *Durruthy v. Pastor*, 351 F.3d 1080, 1089 n.6 (11th Cir. 2003) (emphasis in original).

The remaining issues concern whether Collins conducted a sufficiently thorough investigation prior to arresting Hodges.  Hodges claims "Collins 'turned a blind eye' to exculpatory evidence when he refused to consider just how Hodges – in the absence of permission – accessed Cannon's email."  (Doc. 19 at 22).  Hodges argues that Collins

---

[19] While Hodges "disputes the veracity" of the statements found in the affidavit and claims they are "rank hearsay," Hodges does not allege that Collins knew those statements were untrue or that he acted with reckless indifference as to their truth.  (Doc. 19 at 13).  Although the affidavit contains information taken from statements made during Collins's interviews, that information is not offered to prove the truth of those accusations.  Rather, it is offered to show what Collins knew or believed to be true at the time of Hodges's arrest.  Thus, they are not hearsay.  *Trujillo v. Fla. Agency for Health Care Admin.*, 405 Fed. Appx. 461, 464 (11th Cir. 2010).  Of course, an officer seeking a search or arrest warrant may rely on hearsay as the basis for his belief that probable cause exists.  *See United States v. Bizzard*, 674 F.2d 1382, 1388 (11th Cir. 1982) (internal citation omitted).

[20] Collins argues that probable cause also existed to arrest Hodges for the crimes of eavesdropping or divulging a private message because Hodges "remotely intercepted the contents of a private email message."  (Doc. 10-1 at 13) (citing O.C.G.A. § 16-11-62(1), (4)).  Hodges disputes whether reading an email and forwarding a copy really constitutes a crime under either of these statutes.  It may not, but the circumstances known to Collins through his investigation were suggestive of criminal activity.  Based on the information known to Collins, the Court finds that an officer could reasonably conclude that Hodges's conduct fit one of these crimes.

lacked evidence to show that Hodges stole the password or hacked into the computer system, and in the absence of such evidence, Collins should have investigated this "basic question." (Doc. 19 at 22-23).

An officer may not "investigate selectively," but an "officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (internal quotations and citation omitted). Collins did not arrest Hodges based solely on Cannon's tip. Rather, Hodges conducted interviews with other Byron employees and the police department's technology service provider. There is no evidence that Collins proceeded on a biased basis that would lead him to "investigate selectively" or that he "turned a blind eye" to any facts before him suggesting Hodges lawfully accessed Cannon's email.[21] Although a more extensive investigation may have led Collins to discover that accessing Cannon's email was not unlawful, the investigation was not "plainly incompetent." *Rushing v. Parker*, 599 F.3d 1263, 1268 (11th Cir. 2010) (quoting *Kingsland*, 382 F.3d at 1231). Absent evidence that Collins purposely and knowingly ignored exculpatory evidence, constructed false evidence, or acted in reckless disregard of the truth, the Court is unable to conclude that his behavior was constitutionally deficient.

In sum, regardless of where the arguable probable cause determination fits in qualified immunity analysis, Hodges has not sufficiently established that Collins lacked arguable probable cause.

---

[21] Collins testified at the administrative hearing that Cannon wrote his password on a sticky note and placed it under his mouse pad. (Doc. 13-5 at 24). Collins could have reasonably inferred that Hodges knew where Cannon kept his password or inadvertently found the sticky note and gained access to Cannon's email in this manner.

### (e.) Whether Cannon Had Arguable Probable Cause

Whether Cannon had arguable probable cause for his role in Hodges arrest requires a somewhat different analysis.  Hodges's claim against Cannon is simply stated.  Cannon lied to Collins to get Hodges arrested.  Taking Hodges allegations as true, it almost necessarily follows that Cannon lacked arguable probable cause.  If Cannon in fact gave Hodges permission to read his email, then Cannon did not have arguable probable cause to implicate Hodges in criminal activity.

Cannon attempts to avoid this by arguing that Hodges's own allegations "conclusively show that [his] conduct was unauthorized."  (Doc. 14 at 12).  Even if Hodges had permission to check his email for crime tips, Cannon argues that probable cause existed to arrest Hodges for computer trespass because reading an email sent by a subordinate "went far beyond the scope of any permission allegedly given" and was "without authority" under the statute.[22]

This argument falls short.  Even if Cannon believed Hodges was intercepting his email for reasons other than to review crime tips, Cannon's failure to tell Collins that Hodges did have authority to access his email would be a clearly reckless act, if not a "lie" as Hodges characterizes it, influencing Collins's investigation.  Accepting Hodges's allegations as true, Hodges had accessed Cannon's email on "many occasions prior to March 26, 2010," without incident.  (Doc. 1 at ¶ 29).  If Hodges had permission to access Cannon's email, Cannon could not have reasonably believed that probable cause existed to arrest Hodges when his arrest turned on the question of whether he

---

[22] "'Without authority' includes the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network." O.C.G.A. § 16-9-92(18).

had such permission.[23]   Certainly, he could not withhold this critical information from Collins.  Accordingly, Hodges has sufficiently established that Cannon lacked arguable probable cause for his arrest. [24]

However, Cannon raises the question of whether the law is clearly established that Cannon, as the instigator rather than the arresting officer, can be held liable.  It is. Eleventh Circuit precedent clearly establishes that government officials do not have to actually conduct an arrest or prosecution to be liable for Fourth Amendment violations. In this Circuit, a non-arresting officer who *instigates or causes* an unlawful arrest can still be liable under the Fourth Amendment."  *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (emphasis added); *see also Rodriguez v. Ritchey*, 539 F.2d 394, 400 (5th Cir. 1976) ("[G]eneral principles of tort law provide a cause of action for unlawful arrest against a defendant who 'affirmatively instigated, encouraged, incited, or caused the unlawful arrest.'") (internal citations omitted);[25] *Buckner v. Shetterley*, 621 F. Supp. 2d 1300, 1303 (M.D. Ga. 2008) (finding Eleventh Circuit precedent established, "with obvious clarity, that a government official is prohibited from intentionally providing false information to law enforcement without probable cause and thereby directly causing a Fourth Amendment violation").  Thus, whether Cannon was acting as an investigating

---

[23] Cannon also argues that probable cause existed because the arrest could have been based on other crimes, including eavesdropping, divulging a private message, or computer invasion of privacy.  This argument fails as to Cannon, however, because each of these crimes contemplates acting without authority.  *See* O.C.G.A. §§ 16-9-93(b); 16-11-62(1), (4).

[24] Cannon did not address the issue of malice, asserting only that there was clear probable cause to arrest Hodges.  Malice in a common law tort of malicious prosecution may be inferred from a lack of probable cause.  *See Peterson v. Crawford*, 268 Fed. Appx. 879, 882 (11th Cir. 2008) (noting that a jury could infer malice when no probable cause existed for an arrest).

[25] The Eleventh Circuit has adopted as binding all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

officer, as a supervisory government official, or as both, the law is clearly established that he could not lie in an effort to cause Hodges's arrest.

### F. State Law Claims

Hodges has also brought state law claims for false arrest and malicious prosecution against Cannon and Byron.  Hodges concedes that he did not provide Byron with the required *ante litem* notice for these claims.  O.C.G.A. § 36-33-5. "Compliance with this statute is a condition precedent to suing a municipality under Georgia law and failure to comply is an absolute bar to a state law claim."  *Fulton v. City of Roswell*, 982 F. Supp. 1472, 1475 (N.D. Ga. 1997) (internal citations omitted). Accordingly, Hodges's state law false arrest claim is **dismissed with prejudice** and his state law malicious prosecution claim is **dismissed without prejudice**.[26]

Because Hodges was indicted, he may not bring a state law claim against Cannon for false arrest.  *See McCord*, 168 Ga. App. at 892, 311 S.E.2d at 210 ("If a criminal process is sued out without probable cause and an arrest is made under it, the remedy of the accused depends on whether or not he is actually prosecuted under the warrant.  If after the arrest the warrant is dismissed or not followed up, the remedy is for malicious arrest.  But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for malicious arrest will not lie.") (internal quotations and citations omitted).  Accordingly, Hodges's state law claim for false arrest is **dismissed with prejudice**.

To prevail on his state law malicious prosecution claim, Hodges must show: "(1) prosecution for a criminal offense instigated by [Cannon]; (2) issuance of a valid

---

[26] The Court dismisses Hodges's malicious prosecution claim against Byron without prejudice because of the possibility that the prosecution has not terminated favorably to Hodges.

warrant, accusation, indictment, or summons; (3) termination of the prosecution in favor of [Hodges]; (4) malice; (5) want of probable cause; and (6) damage to [Hodges]." *Kaiser v. Tara Ford, Inc.*, 546 S.E.2d 861, 867, 248 Ga. App. 481, 487 (2001) (citing O.C.G.A. § 51-7-40). "Inherent in this tort, ... is that any prosecution must be *instigated* by the person sought to be held liable." *Id.* (internal citation omitted) (emphasis in original). A person can instigate a prosecution by providing "false, misleading, or materially incomplete information to law enforcement." *Buckner*, 621 F. Supp. 2d at 1303 n.3.

The Court concludes that Hodges's allegations demonstrating an absence of arguable probable cause are also sufficient, if taken as true, to establish the absence of probable cause for Hodges's state law malicious prosecution claim. Further, for the reasons stated, Hodges has sufficiently alleged the termination of the prosecution. Thus, Hodges has sufficiently alleged a state law claim for malicious prosecution against Cannon.[27]

## III.   CONCLUSION

For the foregoing reasons, Defendant Collins's Motion is **GRANTED**, and Defendant Collins is **DISMISSED** as a party to this action. Defendant Byron's Motion is **GRANTED** as to the Section 1983 claims, the state law claims, and the respondeat superior claim and **DENIED** as to the FLSA claim. Defendant Cannon's Motion is

---

[27] "Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure" and is otherwise entitled to official immunity. *Cameron v. Lang*, 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001). However, Cannon has not argued that he is entitled to official immunity for Hodges's state law claims. Therefore, the Court does not analyze whether official immunity applies to Hodges's claims at this stage.

**GRANTED** as to the state law false arrest claim and **DENIED** as to the Section 1983

claims and the state law malicious prosecution claim.  The Motions to Stay Discovery

filed by Defendant Collins (Doc. 11) and Defendants City of Byron and Cannon (Doc.

15) are **DENIED as moot**.


     **SO ORDERED**, this the 12th day of February, 2013.


                S/ Marc T. Treadwell
                MARC T. TREADWELL, JUDGE
                UNITED STATES DISTRICT COURT